WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Firetrace USA, LLC, et al.,           )    No. CV-07-02001-PHX-ROS
                                       )
            Plaintiffs,                )    **SEALED ORDER**
                                       )
vs.                                    )
                                       )
                                       )
Candice Jesclard, et al.,              )
                                       )
            Defendants.                )
                                       )
_____)

Before the Court is Defendants' Motion for Partial Summary Judgment, which will be granted in part. (Doc. 564.)

**BACKGROUND**

Plaintiffs filed an Amended Complaint alleging patent infringement, misappropriation of trade secrets in violation of the Arizona Uniform Trade Secrets Act ("AUTSA"), A.R.S. § 44-401 *et seq.*, unfair competition, unjust enrichment, tortious interference with contractual relationship or business expectation, breach of fiduciary duty, breach of the duty of loyalty, breach of contract, and conversion.[1]  Plaintiff Firetrace Aerospace, LLC ("Firetrace") was formed in 2003 by its parent company, Plaintiff Firetrace USA, LLC, to design, manufacture, and sell fire suppression technology to the military and its suppliers.  One of Firetrace's patented products is "FIRE Panel," a shell containing a fire suppression powder that is used

_____

[1]The Court dismissed the conversion claim, pursuant to Plaintiffs' stipulation.

to protect fuel tanks on vehicles. Lawrence Jesclard (former Defendant, now deceased), was a Senior Program Manager at Firetrace before resigning in February 2006. After resigning, Mr. Jesclard founded Defendant Hazard Protection Systems, Inc., to develop and market a fire suppression product called "NCASE." Plaintiffs allege Mr. Jesclard improperly utilized Firetrace's trade secrets, including customer information, pricing, suppliers, and other information. Defendants move for partial summary judgment on all of Plaintiffs' claims except patent infringement.

## STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). To enter summary judgment, the Court must examine all evidence and find no dispute concerning genuine issues of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-256 (1986). The evidence of the non-moving party is to be believed, and all reasonable inferences drawn in its favor. *See id.* "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted). However, if the non-moving party bears the burden of proof at trial, the moving party's summary judgment motion need only highlight the absence of evidence supporting the non-moving party's claims. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 323-25). The burden then shifts to the non-moving party who must produce evidence sustaining a genuine issue of disputed material fact. *See id.*

**DISCUSSION**

**I.     Unfair Competition, Unjust Enrichment, Breach of Fiduciary Duty, Breach of the Duty of Loyalty, and Tortious Interference**

    **A.     Preemptive Effect of the Arizona Uniform Trade Secrets Act**

Defendants argue the claims for unfair competition, unjust enrichment, breach of fiduciary duty, breach of the duty of loyalty, and tortious interference are prohibited by the preemption provision of the Arizona Uniform Trade Secrets Act ("AUTSA"), A.R.S. § 44-407. The AUTSA defines the common law term "trade secret," and sets forth the remedies that are available for a misappropriation of trade secrets claim. The AUTSA expressly displaces other conflicting Arizona laws that provide remedies for misappropriation of trade secrets:

> § 44-407. Effect on other laws
> A. Except as provided in subsection B, this chapter displaces conflicting tort, restitutionary and other laws of this state providing civil remedies for misappropriation of a trade secret.
> B. This chapter does not effect:
> 1. Contractual remedies, whether or not based on misappropriation of a trade secret.
> 2. Other civil remedies that are not based on misappropriation of a trade secret.
> 3. Criminal remedies, whether or not based on misappropriation of a trade secret.

Defendants argue that because Plaintiffs' common law tort claims are all based on alleged misappropriation of trade secrets, they are all preempted by the AUTSA. Defendants also argue that even if the claims are based on misappropriation of information not rising to the level of "trade secret," they are still preempted by the AUTSA.

Plaintiffs do not dispute that the AUTSA preempts their common law tort claims to the extent they are based on an allegation that Defendants misappropriated trade secrets. Defendants will be granted summary judgment on the common law tort claims in so far as they are based on misappropriation of trade secrets. Plaintiffs argue their tort claims are not preempted to the extent they are based on the misuse of confidential information that does

not meet the AUTSA's definition of a "trade secret."[2] Plaintiffs also argue that their common law tort claims are not entirely preempted because they are not based solely on misappropriation of information, but are also premised on other wrongful acts committed by Mr. Jesclard while employed by Firetrace: (1) initiating his plan to develop a competing product, (2) concealing a request from a customer for a "blanket-type" product, and (3) discussing with a potential Firetrace customer the limitations of the Firetrace product, and failing to share those observations with Firetrace.

Arizona courts have not considered the effect of the preemption provision of the AUTSA. In the absence of a decision from a state's highest court on an issue of state law, a federal court "must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treaties, and restatements as guidance." *Vestar Development II v. General Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) (quotation marks and citation omitted).

The preemption provision in the AUTSA is identical to the preemption provision in the Uniform Trade Secrets Act ("UTSA"), which has been adopted in some form by most states. A number of courts have considered whether the provision preempts all common law tort claims based on the misappropriation of information, or only those that are based on misappropriation of information that meets the statutory definition of a "trade secret," and two camps have developed on both sides. *See Hauck Mfg. v. Astec Industries, Inc.*, 375 F.Supp.2d 649 (E.D. Tenn. 2004) (discussing the nationwide jurisprudence on this issue). The majority interpretation appears to be that the UTSA preempts all common law tort claims based on misappropriation of information, whether or not it meets the statutory definition of a trade secret. *See id.* at 654 ("[T]he UTSA's preemption provision has generally been interpreted to abolish all free-standing alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade secret status . . . .");

---

[2]Plaintiffs do not identify which of the information involved does not rise to level of a trade secret, such that a tort claim based on it would not be displaced by the AUTSA.

- 4 -

*Mortgage Specialists, Inc. v. Davey,* 904 A.2d 652, 776 (N.H. 2006) (disagreeing with the "minority of courts that have held that common law and statutory claims are not preempted by the UTSA if they involve information that does not meet the statutory definition of a trade secret."); *Learning Curve Toys, L.P. v. Playwood Toys,* Inc., 1999 WL 529572, * 3 (N.D. Ill. 1999) ("The purpose of the ITSA [Illinois Trade Secrets Act] was to codify all the various common law remedies for theft of ideas."); *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992) ("[The UTSA] has abolished all common law theories of misuse of [secret] information.").

The Court is persuaded that the Arizona Supreme Court would construe the AUTSA preemption provision in the same manner as the majority of courts, such that it preempts all common law claims based on the misappropriation of secret information. When the Arizona Supreme Court interprets statutes, it applies "fundamental principles of statutory construction, the cornerstone of which is the rule that the best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction." *Backus v. State*, 203 P.2d 499, 502 (Ariz. 2009) (internal quotation marks and citation omitted). The language of the preemption provision of the UTSA is not clear and unequivocal, as evidenced by the divergence in the interpretation given to it by courts. When there is confusion in statutory interpretation, it is necessary to determine the legislative intent for the statute. *Id*; *State v. Sweet*, 693 P.2d 921, 925 (1985). When determining the intent of the legislature, it is "helpful and proper to turn to the overall purposes and aims of the legislature in enacting the statute in order to glean the legislative intent." *Sweet*, 693 P.2d at 925 (internal quotation marks and citation omitted).

The purpose of the UTSA preemption provision is to "create a uniform business environment [with] more certain standards for protection of commercially valuable information, and to preserve a single tort action under state law for misappropriation of a trade secret as defined in the statute and thus to eliminate other tort causes of action founded on allegations of misappropriation of information." *Mortgage Specialists, Inc.*, 904 A.2d at 776; *see also Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F.Supp.2d 943,

948 (W.D. Mich. 2003) (internal citation and quotation marks omitted) (noting the purpose of the UTSA was to "codify all the various common law remedies for theft of ideas . . . ."). If the UTSA's preemption provision only preempted claims of misappropriation of information that meets the statutory definition of a "trade secrets," the provision's purpose would be undermined. In *Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F.Supp.2d 784, 789 (W.D. Ky. 2001), the court explained:

> In every instance where a plaintiff could not meet the statutory requirements of the Uniform Act, the court would be forced to re-analyze the claim under the various common law theories. *See, e.g., Weins v. Sporleder*, 1999 SD 10, 605 N.W.2d 488, 491-92 (S.D. 2000) (citing cases where "numerous courts have specifically found that tort claims such as fraud, unfair competition, and breach of fiduciary duty are preempted by the Uniform Trade Secret Act"). Such a result would undermine the uniformity and clarity that motivated the creation and passage of the Uniform Act.

Plaintiffs' proposed interpretation of the provision would also "forbid preemption of state law claims until a final determination has been made with respect to whether the confidential information at issue rises to the level of a trade secret." *Thomas & Betts Corp. v. Panduit Corp.*, 108 F.Supp.2d 968, 972-72 (N.D. Ill. 2000). Because a different interpretation would undermine the statute's purpose, the Court is persuaded that the AUTSA preempts all Plaintiffs' common law tort claims based on the misappropriation of information, whether or not that information meets the statutory definition of a trade secret.[3]

**B.      Arizona Constitution Anti-abrogation Clause**

Plaintiffs argue that if the AUTSA is construed as preempting common law tort claims based on the misappropriation of information not rising to the level of a trade-secret, then the Act violates Ariz. Const. Art. XVIII, § 6, which provides: "The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject

---

[3]As noted, not all of Plaintiffs' common law tort claims (unfair competition, unjust enrichment, breach of fiduciary duty, breach of the duty of loyalty, and tortious interference) are based on misappropriation of information. Plaintiffs also base these claims on other alleged wrongful conduct committed by Mr. Jesclard. In so far as these claims are based on wrongful conduct other than misappropriation of information, they are considered below under section D: "Common Law Tort Claims Not Based on Misappropriation of Information."

to any statutory limitation." This provision "prevents the legislature from abrogating a cause of action to recover damages for injuries that existed at common law." *Hazine v. Montgomery Elevator Co.,* 861P.2d 625, 633 (Ariz. 1993). In order to be protected by the abrogation clause, the cause of action must have either been recognized at common law when the Arizona Constitution was established in 1912, or have evolved from common law antecedents. *Cronin v. Sheldon*, 991 P.2d 231, 239 (Ariz. 1999).

Plaintiffs fail to establish that a right of action for misappropriation of information was recognized at common law, or has evolved from common law antecedents. Plaintiffs cite a single case, *Amex Distributing Co. v. Mascari*, 724 P.2d 596, 603 (Ariz. Ct. App. 1986), which they claim recognized "confidential information" as a category of protected information distinct from trade secrets. In *Mascari*, the court considered whether information about customers could be given trade secret protection. The court noted that if "customer information is truly confidential, and to a substantial degree inaccessible, it *may* be given a measure of the protection accorded true trade secrets." *Id.* at 602 (emphasis added). But the court went on to rule that the customer information before it was not entitled to protection. *Id.* at 603. A note in a 1986 case stating that it is possible customer information could be protected, though not a "true" trade secret, but concluding that such information was not protected under the circumstances present, provides no evidence that a cause of action for torts based on misappropriation of non-trade secret information existed at common law in 1912. Plaintiffs fail to establish the AUTSA preemption provision violates the anti-abrogation clause of the Arizona Constitution.

## C.     Defendants Did Not Waive Preemption Defense

Plaintiffs argue Defendants waived the preemption defense because they did not present it in their initial Answer. Because Plaintiffs' common law claims for misappropriation of confidential information are preempted, they contain no cause of action that can proceed to trial. Defendants did not, and could not have, waived the defense that the Plaintiffs fail to state claims upon which relief can be granted.

**D.**     **Common Law Tort Claims Not Based on Misappropriation of Information**

As noted above, Plaintiffs argue their common law tort claims for unfair competition, unjust enrichment, breach of fiduciary duty, breach of the duty of loyalty, and tortious interference are not entirely preempted because they are not based solely on misappropriation of information, but are also premised on the following other wrongful acts committed by Mr. Jesclard while still employed by Firetrace: (1) initiating his plan to develop a competing product, (2) concealing a request from a customer for a "blanket-type" product, and (3) discussing with a potential Firetrace customer the limitations of the Firetrace product, and failing to share those observations with Firetrace.

Defendants argue the claims based on these wrongful acts fail on other grounds. Specifically, Defendants argue: (1) the tortious interference and unfair competition claims are barred by the economic loss rule, (2) the unjust enrichment claim is precluded by Mr. Jesclard's employment contract, and (3) the breach of fiduciary duty/duty of loyalty claim fails because Plaintiffs have failed to show proximately caused damages. These arguments will be considered in succession.

**1. Tortious Interference and Unfair Competition Claims are Not Barred by the Economic Loss Rule**

Defendants argue Plaintiffs' tortious interference and unfair competition claims are barred by the economic loss rule because Plaintiffs are only seeking economic damages. The "economic loss rule" is an Arizona State common law doctrine that limits recovery, under certain circumstances, of purely economic damages for a tort claim. *Flagstaff Affordable Housing Ltd. Partnership v. Design Alliance, Inc.*, 223 P.3d 664, 665 (Ariz. 2010). The rule limits "a contracting party to contractual remedies for the recovery of economic losses unaccompanied by physical injury to persons or other property." *Id.* at 667. The purpose of the rule is "to encourage private ordering of economic relationships and to uphold the expectations of the parties by limiting a plaintiff to contractual remedies for the loss of the benefit of the bargain." *Id.* at 671.

Despite the broadly worded manner in which the economic loss rule has been defined as set forth above, the rule does not bar all tort claims that seek only economic damages. *See id.* The borders of the rule are hazy because courts are struggling to determine precisely which tort claims are barred. *See id.* at 666-67 (Noting that "the court of appeals and the federal courts have reached conflicting conclusions regarding the application of the doctrine under Arizona law," and "[c]ourts and commentators have defined the economic loss doctrine in various ways."). The doctrine first arose in product liability cases, informed by a belief that tort law principles should not interfere with the right and responsibility of sellers and consumers of products to privately assign the risks of product failure—unless the product failure threatens public safety. *See* Edward P. Ballinger, Jr. & Samuel A. Thumma, *The Continuing Evolution of Arizona's Economic Loss Rule*, 39 Ariz. St. L.J. 535 (2007) (hereinafter "Ballinger & Thumma"); *Evans v. Singer*, 518, F.Supp.2d 1134 (D. Ariz. 2007). The doctrine was subsequently applied to construction defect cases based on similar policy considerations. *See Flagstaff Affordable Housing Ltd. Partnership*, 223 P.2d at 667. To date, no Arizona court has issued a published decision applying the rule outside of product liability and construction defect cases.[4] *Id.*; *Giles Constr., Inc. v. Commercial Fed. Bank*, 2006 WL 2711501, *10 (D. Ariz. 2006) ("Other than construction and product defect cases, however, the Arizona courts have not applied the economic loss rule as a bar to the recovery of economic damages in tort cases.")

A few federal courts, however, have invoked the economic loss rule outside of product liability and construction defect cases. *See* Ballinger & Thumma (discussing the various cases). In *QC Const. Products, LLC v. Cohill's Bldg. Specialties, Inc.*, 423 F.Supp.2d 1008, 1015-16 (D. Ariz. 2006), the Court ruled that the economic loss rule barred claims for tortious interference with business relationships, fraud, and unfair competition, which were

---

[4]In an decision that was later depublished and which lacks precedential value, *Kana, Inc. v. Burger King, Corp.*, the Arizona Court of Appeals applied the economic loss rule outside the products liability and construction defects context. *Evans*, 518 F. Supp.2d at 1142 n. 2.

based on an allegation that the defendant represented that it was marketing plaintiff's products, when it was in fact marketing a competitor's product. *See also Marks v. Citizens Commc'n Co.*, CV-00-2333-PHX-SMM, (Doc. 143) slip op. (D. Ariz. July 21, 2003); *Pegasus LLC v. Heil Co.,* Inc., CV-96-2851-PHX-JWS, (Doc. 148) slip op. (D. Ariz. April 2, 1999); *Wojtunik v. Kealy*, 394 F.Supp.2d 1149, 1171 (D. Ariz. 2005).

The federal courts that have broadly applied the economic loss rule did not have the benefit of the recent Arizona Supreme Court decision, *Flagstaff Affordable Housing Ltd. Partnership v. Design Alliance, Inc.*, which analyzes the rule at length, adding clarity to its meaning and scope. 223 P.3d 664. In *Flagstaff Affordable Housing Ltd. Partnership,* the court explained that for purposes of the economic loss rule, the term "economic loss" carries a very distinct and particular meaning: "'Economic loss,' as we use the phrase, refers to pecuniary or commercial damage, including any decreased value or repair costs for a product or property that is itself the subject of a contract between the plaintiff and defendant, and consequential damages such as lost profits." *Id.* Although the court's comma placement renders this definition slightly ambiguous, the court appears to be stating that "economic loss" refers only to pecuniary or commercial damage to *products or property* that is the *subject of a contract* between the plaintiff and defendant.

In this case, Plaintiffs allege Defendants' torts caused a business to suffer pecuniary damages. Although an employment contract governed the parties' relationship, it was a contract for services—not a contract for a product or property. Hence, applying the Court's reading of *Flagstaff Affordable Housing Ltd. Partnership*, the economic loss rule is inapplicable to Plaintiffs' tortious interference and unfair competition claims.

The Court recognizes that the scope of the economic loss doctrine remains unclear, and the Arizona Supreme Court's definition of "economic loss" could be interpreted differently. The Arizona Supreme Court's ruling fell short of expressly declaring that the rule only applies in product liability and construction defect cases. But there is little to support the argument that Arizona courts intended the doctrine to apply outside these contexts. The Ninth Circuit has observed that in cases in which the rule has been applied

"outside the product liability context, the [economic loss] doctrine has produced difficulty and confusion." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 874 (9th Cir. 2007). If the doctrine were extended beyond these contexts, it could potentially bar far more common law tort claims than Arizona courts ever intended. As the court warned in *KD & KD Enterprises, LLC*, 2006 WL 3808257, *1 (D. Ariz. 2006), a broad reading of the rule "would basically eviscerate the tort of fraud, for the only damages one has in fraud are economic. The law cannot be so twisted." Breach of fiduciary duty claims (which typically cause only pecuniary damages and arise in situations in which a contract already governs the parties' relationship) could similarly become nearly obsolete. Without some clear indication from the Arizona courts that the economic loss rule applies beyond product liability and construction defect cases, the Court will not extend it to Plaintiffs' tort claims. Summary judgment on Plaintiffs' tortious interference and unfair competition claims will be denied.

### 2. Unjust Enrichment Claim Precluded by Employment Contract

Defendants argue the unjust enrichment claim is precluded by Mr. Jesclard's employment contract. Where "there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Brooks v. Valley Nat'l Bank*, 548 P.2d 1166, 19071 (Ariz. 1976). As discussed above, all of the wrongful acts Plaintiffs allege Mr. Jesclard committed were expressly governed by his employment contract with Firetrace. The unjust enrichment claim is therefore barred.

### 3. Proximate Damage Resulting from Breach of Fiduciary Duties

Defendants argue Plaintiffs have suffered no damage as a proximate result of any wrongful conduct constituting a breach of fiduciary duties, including the duty of loyalty. In Arizona, an employee owes his or her employer a "fiduciary duty," which includes a "duty of loyalty." *Security Title Agency, Inc. v. Pope*, 200 P.3d 977, 989 (Ariz. Ct. App. 2008). To recover for breach of the fiduciary duty of loyalty in Arizona, a plaintiff must prove proximately caused damages. *See Agilysys, Inc. v. Vipond*, 2006 WL 2620103, *2 (D. Ariz. 2006). For the breach to proximately cause an injury, the wrongful conduct must be a "substantial factor in bringing about the harm." *Standard Chartered PLC v. Price*

*Waterhouse*, 945 P.2d 317, 343 (Ariz. Ct. App. 1997); *see also Smith v. Johnson*, 899 P.2d 199, 202 (Ariz. Ct. App. 1995) (A tort plaintiff "must show a reasonable connection between the defendant's act or omission and the plaintiff's injury or damages.")

Plaintiffs allege Mr. Jesclard is liable for breach of fiduciary duty because he told a potential Firetrace customer (while still employed by Firetrace) that the Firetrace product had certain limitations; told the customer he was going to design a better product; falsely told the customer he had unsuccessfully tried to get Firetrace to implement his ideas; and never shared his thoughts regarding the limitations of the product with Firetrace. Plaintiffs also allege Mr. Jesclard failed to disclose he received an email from another potential customer expressing interest in a flexible product. As a result of these wrongful acts, Plaintiffs contend they have been injured in two ways: (1) Firetrace was deprived of the opportunity to pursue the idea and to obtain business from the customer in question, and (2) Mr. Jesclard developed a competing product after leaving Firetrace.

In reply, Defendants argue Mr. Jesclard only owed fiduciary duties and a duty of loyalty to Firetrace while employed with Firetrace, such that there can be no liability for the subsequent development of a competing product. Defendants are correct that an employee owes no fiduciary duty post-termination of the employment relationship. *See Taser Intern., Inc. v. Ward*, 231 P.3d 921, 926 (Ariz. Ct. App. 2010) ("Following the termination of the employment relationship . . . a former employee is free to compete.") Plaintiffs allege, however, that Mr. Jesclard committed the acts described while still employed at Firetrace.

Defendants also argue Mr. Jesclard's alleged acts merely constituted preparation to compete, which is not a breach of fiduciary duty. Defendants are correct that preparation to compete is not enough to support a breach of fiduciary duty claim. *See id.* ("Although an employee may not compete prior to termination, the employee may take action during employment . . . to prepare for competition following termination of the agency relationship.") (internal quotation marks and citation omitted). But the fiduciary duty of loyalty requires that an employee refrain from actively competing with his employer while still employed. *Id* Although an employee may "prepare" to compete, he may not engage in

"acts in direct competition with the employer's business." *Id.* (internal quotation marks and citation omitted). Here, a reasonable jury could find the various alleged wrongful acts by Mr. Jesclard, taken together, constitute a breach of his fiduciary duties. "The line separating mere preparation from active competition may be difficult to discern in some cases." *Id.* (internal quotation marks and citation omitted). Whether an employee's actions constitute a breach of the fiduciary duty of loyalty is "a question of fact to be decided by the trier of fact based on a consideration of all the circumstances of the case." *Security Title Agency, Inc. v. Pope*, 200 P.3d 977, 989 (Ariz. Ct. App. 2008).

There are genuine issues of fact regarding whether Mr. Jesclard's alleged wrongful acts proximately caused Firetrace to be deprived of the opportunity to develop and pursue a different version of its product and to acquire business from a potential customer interested in that different version. A genuine issue of material fact also remains concerning whether Mr. Jesclard's subsequent development of a competing product was proximately caused by his alleged breach of fiduciary duty. Summary judgment will be denied on Plaintiffs' breach of fiduciary duty claims to the extent that they are based on allegations other than misappropriation of confidential information.

## II. Misappropriation of Trade Secrets and Breach of Contract

In the first phase of litigation, the parties agreed to bifurcate liability[5] and damages proceedings for the misappropriation of trade secrets and breach of contract claims. After a bench trial, the Court ruled Mr. Jesclard was liable for misappropriation of trade secrets for disclosing Firetrace's costs of manufacturing FIRE Panel to potential investors. The Court also ruled Mr. Jesclard breached his confidentiality agreement by disclosing information

---

[5] By ruling on "liability," the Court did not rule on whether Plaintiffs satisfied all the elements of the trade secret and breach of contract claims sufficient to overcome summary judgment. As discussed in this Order, damages are an essential element of both misappropriation of trade secret and breach of contract claims. The Court did not consider, and did not rule, on the question of whether Plaintiffs suffered damage. In determining "liability," the Court only considered the question of whether Defendants committed wrongful acts that constituted a breach of duty or breach of contract.

related to Firetrace's costs of manufacturing FIRE Panel, and by disclosing information about the results of FIRE Panel tests. Although finding Mr. Jesclard committed acts constituting misappropriation of trade secrets and breaches of contract, the Court also found Mr. Jesclard did not use the misappropriated information in developing NCASE. The Court indicated that damages, if any, would be determined at a later stage of the litigation.

Defendants move for summary judgment on the misappropriation of trade secrets and breach of contract claims on the ground that Plaintiffs have not suffered proximate damages. Defendants cite testimony from a witness for Plaintiffs stating that Firetrace did not suffer damage from the misappropriation of trade secret liability found by the Court. To recover on a tort or a breach of contract claim, a plaintiff must show proximately caused damages. *See Thompson v. Better-Bilt Aluminum Prods. Co.*, 832 P.2d 203, 207 (Ariz. 1992) (torts); *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004) (breach of contract); *Home Indem. Co. v. Bush*, 513 P.2d 145, 150 (Ariz. App. 1973) (breach of contract).

Plaintiffs argue they suffered damages as a result of the misappropriation of trade secrets and breaches of contract because they resulted in Defendants creating a competing product, and destroyed the value of the confidential information. Plaintiffs argue that but for Mr. Jesclard's use of the information, he would not have created NCASE. Although Plaintiffs acknowledge the Court previously found Mr. Jesclard did not use the trade secret and other confidential information in developing NCASE, Plaintiffs claim that finding was only made in the context of determining whether an injunction was warranted. Plaintiffs argue they did not waive their right to a jury trial on the question of whether Mr. Jesclard's wrongful conduct caused them damage.

Assuming the Court's finding was unnecessary to determining the extent of Defendants' liability, and only related to Plaintiffs' damages, the outcome at this stage is the same. Plaintiffs have not met their burden to overcome summary judgment by showing evidence they were proximately damaged by Mr. Jesclard's use of confidential information. The proximate cause of an injury is defined in Arizona as "that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and

without which the injury would not have occurred." *Saucedo ex. re. Sinaloa v. Salvation Army*, 24 P.3d 1274, 1278 (Ariz. Ct. App. 2001). To have proximately caused an injury, the wrongful conduct must be a "substantial factor in bringing about the harm." *Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317, 343 (Ariz. Ct. App. 1997); *see also Smith v. Johnson*, 899 P.2d 199, 202 (Ariz. Ct. App. 1995) (A plaintiff "must show a reasonable connection between the defendant's act or omission and the plaintiff's injury or damages.") Proximate cause is typically a question of fact for a jury, but it may become a question of law when the facts are undisputed: "What constitutes the proximate cause of an injury in a particular case is a question of fact to be determined from all the surrounding circumstances, and can only be a question of law when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them." *Kavanaugh v. Kavanaugh*, 641 P.2d 258, 266 (Ariz. App. 1981).

Here, Plaintiffs have shown no evidence sufficient to get to a jury that would support a finding that Mr. Jesclard's disclosure of the costs of Firetrace's product to potential investors was a substantial factor in Mr. Jesclard's subsequent creation of a competing product. Nor have they shown evidence that Mr. Jesclard's disclosure of information related to the testing of FIRE Panel proximately caused him to develop a competing product. Because Plaintiffs fail to meet their burden of showing evidence of proximate damages, summary judgment will be granted on the misappropriation of trade secrets and breach of contract claims.

Accordingly,

**IT IS ORDERED** Defendants' Motion for Partial Summary Judgment (Doc. 564) **IS GRANTED IN PART.** Defendants are granted summary judgment on Plaintiffs' claims for misappropriation of trade secrets, breach of contract, and unjust enrichment. Defendants are granted summary judgment on the unfair competition, tortious interference, and breach of fiduciary duty/duty of loyalty claims to the extent they are based on misappropriation of information. To the extent the unfair competition, tortious interference, and breach of

fiduciary duty/duty of loyalty claims are based on other wrongful acts by Mr. Jesclard while employed at Firetrace, the claims survive and summary judgment is denied.

**FURTHER ORDERED** the parties shall file the pretrial documents referenced in the Rule 16 Scheduling Order by **September 17, 2010.** The trial will only address Plaintiffs' surviving unfair competition, tortious interference, and breach of fiduciary duty/duty of loyalty claims, and the pretrial documents should only address these claims. If the patent infringement claim survives summary judgment, a separate trial will be held on the patent infringement claim.

**FURTHER ORDERED** a final pretrial conference will be held on **November 19, 2010 at 1:30 p.m.** The Court will set the trial date and a status conference regarding juror questionnaires at the final pretrial conference.

**FURTHER ORDERED** the parties shall indicate whether this Order should remain sealed and state good cause for keeping it sealed by **August 6, 2010.** If the parties fail to do so, the Clerk of the Court shall unseal this Order.

DATED this 30th day of July, 2010.

cc: all counsel

_____
Roslyn O. Silver
United States District Judge