**ROWLEY CHAPMAN BARNEY & BUNTROCK, LTD.**
63 East Main Street, Suite 501
Mesa, Arizona  85201
Telephone     (480) 833-1113
Facsimile      (480) 833-1114
**Shane D. Buntrock – 019693** (buntrock@azlegal.com)
**Nathaniel H. Wadsworth – 024799** (wadsworth@azlegal.com)

**SANDERS & PARKS, P.C.**
3030 North Third Street, Suite 1300
Phoenix, Arizona  85012
Telephone     (602) 532-5600
Facsimile      (602) 532-5700
**Rick N. Bryson – 010568** (rick.bryson@sandersparks.com)
**Michelle G. Breit – 021439** (michelle.breit@sandersparks.com)

*Attorneys for the Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| FIRETRACE USA, LLC, a Delaware corporation; and FIRETRACE AEROSPACE, LLC, a Delaware corporation,<br><br>　　　　　　Plaintiffs,<br><br>　　vs.<br><br>CANDICE JESCLARD, an individual; CANDICE JESCLARD, personal representative of the estate of Lawrence Jesclard; and HAZARD PROTECTION SYSTEMS, INC., an Alaska corporation,<br><br>　　　　　　Defendants. | Case No. CV-07-2001-PHX-ROS<br><br>(*Assigned to the Hon. Roslyn O. Silver*)<br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND NON-TAXABLE EXPENSES** |

Pursuant to LRCiv.P. 54.2, Defendants submit their Memorandum in Support of Motion for Award of Attorneys' Fees and Non-Taxable Expenses. This Memorandum is supported by the Statement of Consultation of Shane D. Buntrock and the Declarations of Shane D. Buntrock, Michelle G. Breit and James R. Farmer attached as exhibits hereto and incorporated by reference herein.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case arises from Lawrence Jesclard's ("Jesclard") employment contract with Firetrace Aerospace, LLC ("Firetrace") and Mr. Jesclard's post-employment activities to prepare to and then eventually compete with Firetrace.  Plaintiffs asserted multiple claims against Larry Jesclard, Candi Jesclard and Hazard Protection Systems, Inc. ("HPS"), all arising from the same core facts and generally alleging that the actions which resulted in Jesclard's and HPS's competition with Firetrace were wrongful. All of Plaintiffs' claims were disposed of in Defendants' favor as summarized below.

Following a permanent injunction hearing and trial as to liability only on Plaintiffs' claims for misappropriation of trade secrets and breach of contract, Defendants prevailed on a summary judgment motion as to those claims and Plaintiffs' unjust enrichment claim. (Doc. 598). Defendants were also granted summary judgment on Plaintiffs' patent infringement claim. (Doc. 723).  Upon the parties stipulation (Docs. 355 and 726), the Court dismissed with prejudice Plaintiffs' claims for conversion and unfair competition. (Docs. 359 and 734). Plaintiffs' final claims for breach of fiduciary duty/duty of loyalty and tortious interference were tried before a jury in March 2011, and the jury found for Defendants. (Doc. 768). The Court reiterated the dismissal of the claims for conversion and unfair competition and entered a final judgment in favor of Defendants on all remaining claims on March 25, 2011 (the "Judgment"). Defendants now seek an award of their reasonable attorneys' fees incurred in successfully defending against each and every one of Plaintiffs' claims.

From the time they began defending this action in October 2007 through the completion of the bench trial for the breach of contract and misappropriation claims and the hearing on Plaintiffs' request for a temporary restraining order/permanent injunction in May 2008, Defendants incurred fees of approximately $1,006,256.00. This included time spent in accelerated discovery, fact witness and expert witness discovery, and a four-day bench trial wherein the parties exchanged more than 100,000 pages of documents.

Between May 2008 and December 2008 when the majority of the litigation focused on Plaintiffs' appeal of the court's ruling on the bench trial and denial of the permanent injunction, Defendants expended approximately $271,006.50 in fees. From January 2009 through June 2010, Defendants incurred approximately $797,689.50 in attorneys' fees for work related to the discovery of all remaining claims, including the patent claim, claim construction briefs, fact and expert discovery and summary judgment briefs on the remaining tort claims and the issue of damages on the breach of contract claim. From July 2010 through September 2010, for work principally related to the patent infringement summary judgment briefs and pretrial work on the claims surviving summary judgment, Defendants incurred approximately $114,475.00 in fees. Finally, from October 2010 through April 2011, for pretrial and trial work on Plaintiffs' remaining claims, Defendants incurred approximately $258,732.50 in fees. The total amount of attorneys' fees incurred by Defendants through April 2011 is $2,448,159.50.

After personal consultation with Plaintiffs' counsel conducted on May 18 and 24, 2011, and despite Defendants' good faith efforts, the parties were unable to satisfactorily resolve the disputed issues related to attorneys' fees. Exhibit 1, Statement of Consultation of Shane D. Buntrock, ¶¶ 1-3. Defendants request total fees of $2,448,159.50, which fees are documented by the fee agreements and itemized statements attached to Exhibits 2, 3 and 4. As the prevailing parties on each claim and for the reasons explained below, Defendants are entitled to these reasonable fees.

## II.    ARGUMENT

### a.    Eligibility

**Breach of contract claim**

A.R.S. § 12-341.01(A) permits recovery of attorneys' fees for the successful party in "any contested action arising out of a contract." This statute allows an award of fees to a prevailing party even where a contract's unilateral provision for attorneys' fees contemplates an award only to the other party:

> Where a contract has a unilateral provision permitting one party to recover attorneys' fees under certain circumstances, § 12-341.01(A) requires that the

> contract provision be applied when the party seeking recovery of fees is the one allowed recovery under the unilateral contract provision. . . . Where the same contract lacks a provision regarding the other parties' rights, or denial of rights, to an award of attorneys' fees, § 12-341.01 applies.

*Pioneer Roofing Co. v. Mardian Const. Co.*, 152 Ariz. 455, 471, 733 P.2d 652, 668 (Ariz. App. 1986); *see also Jordan v. Burgbacher*, 180 Ariz. 221, 229, 883 P.2d 458, 466 (Ariz.App. 1994).

Here, Plaintiffs' claim for breach of contract is based on the Confidentiality Non-Solicitation Non-Compete Agreement (the "Agreement") between Jesclard and Firetrace. *See* Amended Verified Complaint ("Complaint"), Doc. 24, ¶¶ 27, 77-82. The Agreement expressly calls for an award to Firetrace of reasonable attorneys' fees and costs "incurred in connection with the enforcement of this Agreement" but does not contain a similar provision in favor of Jesclard. Exhibit 5, Agreement, ¶ 12. As the Agreement does not contemplate an award of fees to Defendants, they are eligible for fees pursuant to § 12-341.01(A).

**Claims interwoven with breach of contract claim**

In addition to recovering attorneys' fees expended in litigating a contract claim, a successful party may also recover "fees expended in litigating an 'interwoven' tort claim." *Ramsey Air Meds, LLC v. Cutter Aviation, Inc.*, 198 Ariz. 10, 13, 6 P.3d 315 (Ariz.App. 2000)), cited with approval by *Merchant Transaction Systems, Inc. v. Nelcela, Inc*, Slip Copy, 2011 WL 1045237, 2 (D.Ariz. 2011). Further, the party seeking fees is not required to segregate fees incurred for contract claims from fees related to other claims where the claims are intertwined and the award is reasonable. *See Sparks v. Republic National Life Insurance Co.*, 132 Ariz. 529, 544, 647 P.2d 1127, 1142 (Ariz. 1982).

In *Modular Mining Systems, Inc. v. Jigsaw Technologies, Inc.*, 221 Ariz. 515, 212 P.3d 853 (Ariz.App. 2009), the court of appeals held that § 12-341.01 applied to make fees available to a defendant who successfully defended against various tort claims which were interwoven with a breach of contract claim. The plaintiff, Modular, filed suit after two of its former employees formed a company which began competing with Modular. Modular's claims against its former employees and their company, like here, included

misappropriation of trade secrets in violation of Arizona's Uniform Trade Secrets Act, unfair competition, intentional interference with business relationships, intentional interference with contract, and breach of employment agreements. The defendants successfully moved for summary judgment on all claims and were awarded all their requested attorneys' fees pursuant to A.R.S. § 12-341.01. On appeal, the court agreed with the trial court that "Modular's claims were inextricably interwoven" and that therefore fees were proper under § 12-341.01. *Id.*, 221 Ariz. at 522, 212 P.3d at 860.

In explaining its decision, the *Modular* court noted that the breach of contract claims and misappropriation claims "were based on the same set of facts, involving . . . common allegation[s] . . ." and that, as defendants asserted, the claims "required the same factual development and research work, and all depositions and all other work related to discovery and disclosure w[ere] necessary in connection with both claims." *Id.*, 221 Ariz. at 522-23, 212 P.3d at 860-61 (quotation omitted) (second bracket in original). The court further found that the legal issues were interwoven:

> First, the trade secrets claim was premised on the asserted misappropriation of Modular's trade secrets, which was allegedly committed primarily by the individual defendants' breaching the confidentiality provisions of their employment agreements and using Modular's "inside information." . . . Finally, Modular's unfair competition and tortious interference claims were based on the same set of facts as its trade secrets claim. As Jigsaw explains, those claims "were completely dependent upon Modular's ability to prevail on its misappropriation claims" and "required no separate legal services."

*Id.*, 221 Ariz. at 523, 212 P.3d at 861.

Here, just as the defendants in *Modular*, Defendants were sued following an alleged breach of Jesclard's employment agreement, and the same alleged facts gave rise to the misappropriation of trade secrets claim. Indeed, Plaintiffs expressly relied on the Agreement in connection with their claim for misappropriation as stated in the portion of their Complaint devoted to the misappropriation claim:

> Jesclard is obligated by his Agreement with Firetrace and by applicable law to maintain the secrecy of Firetrace's confidential information. Nonetheless, Jesclard threatens to breach, inevitably will utilize or has breached these duties by utilizing or disclosing Firetrace's trade secrets and confidential information.

Complaint, ¶ 49.

As in *Modular*, there can be no dispute that the misappropriation claim, which was tried together with the breach of contract claim and based on the same alleged facts, was interwoven with Plaintiffs' breach of contract claim. Plaintiffs' claim for unjust enrichment was also disposed of together with Plaintiffs' claims for misappropriation and breach of contract and, along with the conversion claim and unfair competition claim, was based on the same core set of facts. As such, fees are available for these interwoven claims under § 12-341.01.

**Tort claims not existing 'but for' a contract**

Arizona courts also allow attorneys' fees under § 12-341.01 for tort claims that require the existence of a contract before the tort duty can arise. In *Sparks v. Republic National Life Insurance Co.*, for example, the Arizona Supreme Court explained that fees may be awarded pursuant to § 12-341.01 to the successful party on a tort claim "as long as the cause of action in tort could not exist but for the breach of the contract." 132 Ariz. at 543, 647 P.2d at 1141. Therefore, the *Sparks* court in an insurance context found that the tort of bad faith could not be committed absent the existence of a contract, making the tort of bad faith a claim "arising out of a contract" for purposes of § 12-341.01. *Id*. This court recognizes the *Sparks* holding that "An action arises out of contract under A.R.S. § 12-341.01(A) if it could not exist 'but for' the contract." *Lemon v. Harlem Globetrotters Intern., Inc.*, 2007 WL 1200938, 1 (D.Ariz. 2007) (quoting *Hanley v. Pearson,* 204 Ariz. 147, 61 P.3d 29, 33 (App. 2003) (quoting *Sparks,* 132 Ariz. 529, 647 P.2d at 1141)).

In further extending the reach of *Sparks*, Arizona courts have held that the tort of breach of fiduciary duty arises out of contract for purposes of § 12-341.01. In *Burkons v. Ticor Title Insurance Co. of California*, 165 Ariz. 299, 312, 798 P.2d 1308, 1321 (App. 1989), *vacated on other grounds*, 168 Ariz. 345, 813 P.2d 710 38 (1991), the court of appeals held that fees were proper under § 12-341.01 on a claim for breach of fiduciary duty alleged against an escrow agent because "in Arizona, in the absence of a contract, an escrow agent owes no fiduciary duty." Likewise, where limited partners of a limited partnership brought a claim for breach of fiduciary duty against the general partners, the

court found that an award of attorneys' fees was proper under § 12-341.01 "because the relationship between the parties was founded on the partnership contract." *Jerman v. O'Leary*, 145 Ariz. 397, 403 701 P.2d 1205, 1211 (Ariz.App. 1985).

In this case, Plaintiffs' claim for breach of fiduciary duty could not have arisen but for the contractual employment relationship between Jesclard and Plaintiffs. Moreover, it is clear from reading the Agreement that the same alleged acts which gave rise to the breach of fiduciary duty claim would have also resulted in a breach of the Agreement. The jury trial on Plaintiffs' breach of fiduciary duty claim was virtually a retrial of the breach of contract claim, as every alleged tortious action of Jesclard would also have resulted in a breach of the Agreement. Jesclard was alleged to have (1) failed to disclose a customer request for a product with knowledge that Firetrace would have valued the information; (2) failed to share his idea for a flexible product to Firetrace's detriment; (3) disparaged his employer's product, and (4) improperly competed with Firetrace, thereby interfering with Firetrace's business relationships. Separately or together, these acts would have resulted in a breach of the Agreement, which required Jesclard to

- "devote [Jesclard's] full business time and best efforts to the performance of the duties assigned to [Jesclard]"

- "not engage in any activity which conflicts or interferes with the performance of [Jesclard's] duties for the company"

- not disclose or utilize any confidential information for any reason (included in the definition of "Confidential Information" are "ideas reasonably related to the business of the Company and information "relating to the Company's customers . . . or products")

- not "engage in a competitive business" for six months following termination.

Exhibit 5, p. 2-3.

As Jesclard owed no fiduciary duties absent his contractual relationship with Firetrace, and as the tortious interference claim was dependent on the proving of a breach of fiduciary duty, fees are proper under § 12-341.01 for the interwoven breach of fiduciary duty and tortious interference claims tried in March 2011. Moreover, as the defense of the

claims required the same legal and factual preparation, a separation of fees for the individual claims is neither required nor possible.

**Patent Infringement claim**

Pursuant to 35 U.S.C. § 285, in a case alleging patent infringement, "the court in exceptional cases may award reasonable attorney fees to the prevailing party." Defendants are eligible for fees for defending Plaintiffs' patent infringement claim if the Court finds this is an exceptional case.

**Recovery of electronic legal research costs**

A prevailing party may recover the cost of computerized legal research as an element of attorneys' fees. *Ahwatukee Custom Estates Management Ass'n, Inc. v. Bach*, 973 P.2d 106, 108-9 (Ariz. 1999). Accordingly, these costs are included in Defendants' request.

**Fees and non-taxable costs associated with preparation of fee request**

Because the Defendants' entitlement to fees is based on statute, Defendants are eligible to recover fees incurred in preparing and litigating their fee motion. *See In re Nucorp Energy, Inc.,* 764 F.2d 655, 659-60 (9th Cir. 1985) ("In statutory fee cases, federal courts, including our own, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable.")

    b.    <u>Entitlement</u>

**Entitlement pursuant to A.R.S. 12-341.01**

In its discretion, the court may award fees to the "successful party" under § 12-341.01(A). A defendant who is not found liable on any of the claims against him is considered the successful party. *See, e.g.*, *Modular Mining Systems, Inc. v. Jigsaw Technologies, Inc.,* 221 Ariz. 515, 522, 212 P.3d 853 (App.2009).

It is expected that Plaintiffs will argue that they were successful on the breach of contract claim because the Court found that Jesclard had committed a breach of contract. However, Plaintiffs did not prevail on this claim because they failed to prove any damages. Arizona law is clear that, in addition to proving a breach, "to prevail on a claim

for breach of contract, the plaintiff must prove . . . *resulting damage to the plaintiff*." *In re Gorilla Companies, LLC*, 2011 WL 855788, 4 (D.Ariz. 2011) (citations omitted) (emphasis added). Plaintiffs therefore did not prevail on their breach of contract claim.

Moreover, any token success Plaintiffs argue they achieved is dwarfed by the success of Defendants in having each and every claim decided in their favor. In determining the success of a party in a case with multiple claims, the court should consider the "totality of the litigation." *Clark v. Country Cas. Ins. Co.*, Slip Copy, WL 4269501, 1 (D.Ariz. 2010) (citations omitted). In *Clark*, the plaintiff brought multiple claims against the defendant insurer for denying an insurance, including breach of contract, negligent and intentional infliction of emotional distress, bad faith and punitive damages. Only the claim for breach of contract survived summary judgment, and the plaintiff ultimately prevailed on that claim alone. Despite the fact that the plaintiff won an award of damages, this court held that the defendant was the successful party for purposes of § 12-341.01. The court reasoned that Plaintiffs' unsuccessful claims were those that would have resulted in the greatest reward to Plaintiff, and that Plaintiff's sole claim to victory, given the relative small amount of money awarded, "can hardly be called a huge success." *Id*. at 2.

Plaintiffs here have an even more untenable claim on "successful party" status, having prevailed on exactly zero of their eight claims. Plaintiffs sought a reward of $50 million plus punitive damages on their breach of fiduciary duty and tortious interference claims alone and were awarded nothing. Defendants, on the other hand, succeeded entirely in their efforts to avoid all liability. Defendants are indisputably the successful party to this litigation.

Entitlement to an award of attorneys' fees under A.R.S. § 12-341.01 and the appropriate amount to be awarded is evaluated through consideration of six factors: (1) the merits of the unsuccessful parties' claims or defenses; (2) whether litigation could have been avoided or settled; (3) whether assessing fees against the unsuccessful party would cause extreme hardship; (4) whether the successful party prevailed with respect to all

relief sought; (5) the novelty of the issues; and (6) whether the award will overly deter others from bringing meritorious suits. *Velarde v. Pace Membership Warehouse, Inc.*, 105 F.3d 1313, 1319 (9th Cir. 1997); *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 694 P.2d 1181, 1184 (1985).

As evidenced by the Court's rulings and the jury's verdict with respect to Plaintiffs' claims, the relative merits of the claims tip overwhelmingly in favor of Defendants. This litigation should have never been brought. Moreover, it could have settled without the need for four years of litigation. Plaintiffs never made a reasonable settlement offer, maintaining throughout the litigation that Defendants were liable for tens of millions of dollars. Plaintiffs, who employed numerous attorneys to prosecute their case, paid an expert witness more than $320,000 to testify regarding damages, and allege to maintain a profit margin in the neighborhood of 70 percent, will not suffer an extreme hardship by paying Defendants' fees. (*See*, Exhibit 6, Trial Transcript, March 8, 2011, testimony of Michael Chase, 634:22-635:8, 645:21-646:3).

Moreover, an award will not deter parties from bringing claims that, unlike those of Plaintiffs, have merit. A denial of an award to Defendants, however, may well deter defendants with meritorious defenses from defending a lawsuit. Plaintiffs' claims were not novel. Accordingly, Defendants ask the Court to exercise its discretion to award Defendants their reasonable attorneys' fees incurred in defending against Plaintiffs' claims.

**Entitlement pursuant to 35 U.S.C. § 285**

The Federal Circuit Court of Appeals recently explained that a patent case may be found exceptional for purposes of awarding attorneys' fees pursuant to 35 U.S.C. § 285 "when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed.R.Civ.P. 11, or other major impropriety." *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1314 (Fed.Cir. 2010) (citations omitted). Where the litigation is objectively baseless and brought in subjective bad faith, fees may be assessed

even in the absence of misconduct during the litigation. *Id*; *see also Realtek Semiconductor Corp. v. Marvell Semiconductor, Inc.*, 2005 WL 3634617 (N.D. Cal. 2005) (finding an award of attorneys' fees against plaintiff proper where plaintiff should have known that its infringement claim was not meritorious before filing suit and no reasonable litigant could have expected to prevail on the claim for patent infringement); *Sorkin v. Universal Bldg. Products Inc.*, 2010 WL 519742, 2 (E.D.Tex. 2010) (finding the case "exceptional" under section 285 where patentee pursued its infringement claim even after the court's claim construction order made the infringement claim frivolous).

In *Sorkin*, the plaintiff patentee brought claims for patent infringement which the court found were either "(1) untenable from a very early date, or (2) became so after the court's . . . claim construction order." 2010 WL 519742, 3. Among other things militating in favor of an "exceptional" case finding, the court found it "difficult to imagine" how the plaintiff could believe that the defendant's polypropylene chairs literally infringed plaintiff's patent claim requiring the chair to be made of nylon. *Id*. Had plaintiff's counsel conducted a reasonable pre-suit investigation, they would have found that the claimed infringement related to the nylon construction "was frivolous and a waste of the parties'— and this court's—time and resources." *Id*. Furthermore, after the court issued its claim construction order defining the patent term "pin member," it was clear that "none of the accused products contained this claim limitation." *Id*. Still, plaintiff (who also ignored a Rule 11 motion served by Defendant arguing that the claims were without merit) continued to prosecute its infringement claims until they were disposed of on summary judgment. *Id*. Because the patentee "repeatedly took positions that were contrary to his own prior art and not even remotely supported by the claim language and the court's claim construction order," the court found the case to be "exceptional" and granted an award of fees pursuant to section 285. *Id*. at 4.

Here, Plaintiffs prosecution of its patent claim, as set forth in Defendants' Rule 11 Motion and Reply, incorporated herein by reference, warrants a finding of an exceptional case. As in *Sorkin*, if Plaintiffs conducted a reasonable good faith pre-suit investigation,

they would have learned that Defendants flexible fabric product did not infringe Plaintiffs' patent. No reasonable litigant could have expected to prevail on the patent infringement claim as Kevlar fabric cannot possibly be considered "rigid." Instead of owning to their failure to conduct a reasonable pre-filing investigation, Plaintiffs abandoned the plain and ordinary meaning of the term "rigid" and attempted to reinvent the meaning of the term with a definition that violated the canons of claim construction. Further, after the Court's claim construction order clearly rejected Plaintiffs' proposed construction of the term "rigid," Plaintiffs still refused to abandon their claim, which was ultimately disposed of on summary judgment.

This case is clearly exceptional under the standards of section 285 and has been since the time Plaintiffs filed their Complaint. Even if this Court were to excuse Plaintiffs' frivolous filing of the patent infringement claim, the Court should not allow Plaintiffs to escape the consequences of ignoring the Court's claim construction order and forcing Defendants to incur significant and unnecessary attorneys' fees.

### c.      Reasonableness of Requested Award

Defendants seek an award of attorneys' fees and non-taxable costs in the total amount of $2,500,674.52, broken down as follows: fees paid to Rowley Chapman Barney & Buntrock, Ltd. in the amount of $1,472,280.50; fees paid to Sanders & Parks, P.C. in the amount of $850,560.00; fees paid to Vancott Bagley Cornwall & McCarthy, P.C. in the amount of $125,319.00; and computer-aided research charges in the amount of $52,515.02. See Exhibits 2, 3 and 4.  As set forth in Exhibits 2, 3 and 4, filed herewith, these fees and charges are based on prevailing rates established with a consideration of the experience possessed and required by the attorneys and paralegals providing these services.

**The time and labor required of counsel**

This litigation began in October 2007. The docket contains more than 800 entries, reflecting the active and contentious nature of the proceedings and the complex and frequent motion practice. Two full trials have been held and one appeal prosecuted, with

all the necessary pre- and post-trial preparations and motion practice. In light of the time and labor required to reach the judgment, the requested fees are reasonable.

**The novelty and difficulty of the questions presented**

Plaintiffs' claims were not novel. Still, given the amount at stake, it was necessary that Defendants thoroughly understand all legal and factual considerations before the Court, making the preparation difficult and time-consuming.

**The skill requisite to perform the legal service properly**

The successful defense of Plaintiffs' claims required the work of multiple attorneys and paralegals skilled in their respective subject areas.

**The customary fee charged in matters of the type involved**

Generally, "a reasonable fee is . . . the actual billing rate which the lawyer charged in the particular matter." *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 187, 673 P.2d 927 (Ariz.App. 1983). Defendants' counsel charged their customary fees for matters of the type involved. These fees, as explained in the Declaration of Shane D. Buntrock are based on prevailing rates in the community.

**Whether the fee contracted between the attorney and the client is fixed or contingent**

Defendants paid a fixed fee to their counsel, resulting in direct and significant out-of-pocket costs to Defendants.

**The amount of money, or the value of the rights, involved, and the results obtained**

For Defendants, their entire economic existence and livelihood was at stake. Plaintiffs requested damages of $50 million plus punitive damages, which would have effectively put Defendants out of business and left Plaintiffs with a monopoly in the military fire suppression market.

**The experience, reputation and ability of Counsel**

The lead attorneys for Defendants have many years of experience in litigating matters of this nature and, as evidenced by their success in this case, are possessed of high ability. Their firms are highly regarded in their respective communities.

**Awards in similar actions**

In *Merchant Transaction Systems, Inc. v. Nelcela, Inc*, Slip Copy, 2011 WL 1045237, 2 (D.Ariz. 2011), this Court awarded one related group of successful defendants the total of $2,669,766.44 and another group of successful defendants the total amount of $600,931.85 for fees incurred in successfully defending claims which included copyright infringement and breach of contract. Though all the facts and issues are not clear from the court's opinion, that case similarly included multiple defendants, was bifurcated into separate phases, and included contract claims as well as intellectual property claims. The total award of $3,270,698.29 was reasonable in those circumstances.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, this Court should award Defendants attorneys' fees and related non-taxable expenses in the total amount of $2,500,674.52. As set forth above, Defendants reserve the right to supplement this request to include additional fees and non-taxable costs incurred in litigating the post-trial motions and preparing this request.

RESPECTFULLY SUBMITTED this 24th day of May, 2011.

**ROWLEY CHAPMAN BARNEY & BUNTROCK, LTD.**


 /s/ Shane D. Buntrock
Shane D. Buntrock, Esq.
Nathaniel H. Wadsworth, Esq.

 –and–

**SANDERS & PARKS, P.C.**
Rick N. Bryson, Esq.
Michelle G. Breit, Esq.

*Attorneys for the Defendants*

**E-FILED and COPY TRANSMITTED**
**via CM/ECF on this 24th day of May,**
**2011, to:**

Lawrence G. Scarborough, Esq.
J. Alex Grimsley, Esq.
Jason K. Reed, Esq.
Catherine M. Lockard, Esq.
Megan I. Lennox, Esq.
BRYAN CAVE LLP
One Renaissance Square
Two North Central Avenue, Suite 2200
Phoenix, Arizona  85004-4406
*Attorneys for the Plaintiffs*


 /s/ Sarah Sue Hawkes
Sarah Sue Hawkes, Paralegal